NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLES W. GIBSON, *Appellant.*

No. 1 CA-CR 14-0413
FILED 6-30-2015
AMENDED PER ORDER FILED 6-30-15

Appeal from the Superior Court in Coconino County
No. S0300CR201300629
The Honorable John N. Lamb, Judge

**AFFIRMED**

COUNSEL

Office of the Attorney General, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Office of the Coconino County Public Defender, Flagstaff
By Brad Bransky
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Peter B. Swann joined.

---

**GOULD**, Judge:

**¶1**　　　　Defendant, Charles W. Gibson, timely appeals from his convictions and sentences for six counts of child molestation, two counts of sexual conduct with a minor, and one count of continual sexual abuse of a child for acts involving his two grandsons, M.T. and A.G., and his girlfriend Sharon's grandson, N.M.[1]  For the reasons set forth below, we affirm.

**DISCUSSION**

*Amendment of Indictment*

**¶2**　　　　The State filed an initial indictment on August 8, 2013.  Each of the charges against Defendant alleged a range of dates for the offenses charged.  On August 26, 2013, the state filed a motion stating its intent to amend the date ranges in the indictment "should the victims provide different dates for the charged incidents than previously described."  Defendant did not respond to this motion.

**¶3**　　　　On the first day of trial the prosecutor advised the court and defense counsel that based on M.T.'s testimony, he would be seeking to amend the dates in the indictment.  After all three victims had testified and the State had rested, the prosecutor again moved to amend the indictment to conform to the victims' testimony and submitted a proposed amended indictment to the court.  Defense counsel requested additional time to review the proposed amendments.  The trial court agreed, and stated it would revisit the motion to amend on the following day.

**¶4**　　　　On the following day, the court returned to the issue of the proposed amended indictment.  Defense counsel objected to the "modification of [the] date ranges" because it was "not correcting a technical error" in the indictment.  Also, according to counsel, Defendant

---

[1] We view the evidence in the light most favorable to sustaining the convictions and resolve all reasonable inferences against defendant.  *State v. Karr*, 221 Ariz. 319, 320, ¶ 2 (App. 2008).

had "been working for two years going through his phone records trying to identify . . . dates, times and places" and, "now [that] the ranges [had] changed again," it "altered our defense" and triggered "notice issues." Defense counsel argued that the original indictment broadened the date ranges to the point that Defendant was unable to present an alibi defense, but now that the proposed amendments narrowed some of those ranges again it was possible that Defendant "could have presented an alibi defense," which constituted actual prejudice.

¶5        The trial court agreed with the prosecutor that Defendant had sufficient notice of the proposed amendments and that the proposed changes were simply "a correction of mistake of fact" permitted by Rule 13.5(b) of the Arizona Rules of Criminal Procedure. The amended indictment was provided to the jury for its deliberations.

¶6        On appeal, Defendant claims that the trial court abused its discretion by allowing the State to amend the indictment. Specifically, Defendant argues that had he known the time ranges would be narrowed, it might have been possible for him to review his phone records and present an alibi defense. Thus, he asserted the amendments caused him actual prejudice and denied him proper due process notice.

¶7        We review for an abuse of discretion a trial court's decision to permit the amendment of an indictment. *State v. Buccheri-Bianca*, 233 Ariz. 324, 329, ¶ 16 (App. 2013). Rule 13.5(b) permits an indictment to be amended "only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment." Ariz. R. Crim. P. 13.5(b). "A defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *State v. Bruce*, 125 Ariz. 421, 423 (1980). An indictment is automatically deemed amended "to conform to the evidence adduced at any court proceeding" if the amendment "results in no change in the underlying offense or actual prejudice to the defendant." Ariz. R. Crim. P. 13.5(b); *State v. Jones*, 188 Ariz. 534, 544 (App. 1996), *abrogated on other grounds by*, *State v. Ferrero*, 229 Ariz. 239 (2012).

¶8        As Defendant concedes, generally "[a]n error as to the date of the offense alleged in the indictment does not change the nature of the offense, and therefore may be remedied by amendment" absent actual prejudice to the defendant. *Jones*, 188 Ariz. at 544. Furthermore, Defendant bears the burden of showing that he suffered actual prejudice by the amendment. *Id*.

¶9        The record shows that the prosecutor notified Defendant and the court months prior to trial that he would seek to amend the dates of the charged offenses.  The prosecutor stated that he anticipated there might be varying testimony regarding the dates of the offenses given the young ages of the victims at the time of the offenses, the length of time over which the offenses occurred, and the length of time between the offenses and the trial itself.  Thus, defense counsel was given notice well before trial of the possible amendments.

¶10        Defendant also argues that the narrowing of the date ranges caused him actual prejudice because, had he known the offense dates would be narrowed, he would have looked more closely at his phone records and might have been able to devise a viable alibi defense. However, the time frames in the indictment were narrowed as to only three offenses: two counts of sexual conduct with a minor involving A.G., Amended Counts 7 and 8, in which the end date was reduced by one year from 10/31/2011 to 10/31/2010 and from 5/31/2012 to 5/31/2011 respectively; and the sole count of continuous sexual abuse of a child, involving M.T., Amended Count 10, in which the range was changed from "on or between 5/1/2001 and 4/30/2011" to "on or between 5/1/2002 and 12/31/2006."

¶11        The record establishes that Defendant reviewed and studied his phone records for over two years in preparation for trial and decided not to present an alibi defense.  Defendant's defenses were that the offenses never happened, and that the victims were lying because they were angry with him because of some disciplinary action or because he did not allow them to do something they wanted to do.   In addition, Defendant maintained that his son, A.G.'s stepfather, was supporting the allegations against him based on financial interests and motivations.

¶12        The narrowing of the date ranges did not present Defendant here with any new dates to account for that were not already known to him. Indeed, the amendments assisted Defendant by narrowing the range of dates for the commission of the subject offenses.  Furthermore, Defendant fails to establish that he suffered "actual prejudice" because he does not claim, let alone show, that his phone records would have provided him with an alibi defense to the charges within the new, narrowed time frames. *See State v. Hamilton*, 177 Ariz. 403, 410 n.6 (App. 1993) (defendant's assertion that he could not present alibi defense because he could not reconstruct his life for a specific year is a "theoretical, not an actual prejudice, that could be asserted any time an offense was alleged to have occurred over a period of time").

*DVD Evidence/Homosexual Pornography*

**¶13**     Defense counsel objected to the state's admission of a DVD that was found in a drawer in Defendant's office. The DVD was entitled "Bruce's Bareback Yard, Bareback 8" that contained homosexual pornography. The drawer also contained various sex toys and two other DVDs with adult heterosexual pornography.

**¶14**     Defense counsel argued at various points throughout the trial that the DVD was irrelevant because none of the victims reported that Defendant had shown them the DVD and because adult gay male pornography did not denote an interest in children.

**¶15**     During defense counsel's cross-examination of Defendant's daughter regarding Defendant's relationships with various women over the years, the trial court questioned defense counsel about the relevancy of these questions. The court asked counsel if the questions were intended "to show that [defendant was] interested in women." Defense counsel replied, "that's true, and that's part of our defense." Based on this response, the trial court determined that Defendant had "opened the door" to the evidence, and that the state would be permitted to show Defendant had gay pornography.

**¶16**     On appeal, Defendant argues that the evidence was not relevant and that it was unduly prejudicial. We review a trial court's evidentiary rulings for an abuse of discretion and give great deference to the trial court's determination of relevance. *State v. Rose*, 231 Ariz. 500, 514, ¶ 63 (2013). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence more or less probable than it would be without the evidence. Ariz. R. Evid. 401; *State v. Oliver*, 158 Ariz. 22, 28 (1988) (citing *State v. Adamson*, 136 Ariz. 250, 259 (1983). This standard of relevance is not particularly high. *Id.* Moreover, by putting on evidence, a defendant may open the door to proper rebuttal evidence that may not otherwise have been admissible. *State v. Fulminante*, 161 Ariz. 237, 254 (1988). In rebuttal, the state may then offer "any competent evidence that directly replies to or contradicts any material evidence introduced by the accused." *Id*.

**¶17**     Defense counsel referenced Defendant's "adult appropriate relationships" with his "long-term girlfriend" and another woman he dated in her opening argument. As noted above, defense counsel admitted to the trial court that, as part of the defense, she sought to show that Defendant was interested in women, not men. Consequently, Defendant testified

about his "adult female relationships" including his relationships with his ex-wife, his long-time girlfriend, a former neighbor and women he met on-line or at work. During cross examination, when asked directly if he was "indicating to the Jury that [he] did not molest [his] grandchildren, at least in part because [hedid not] have any interests in males," Defendant replied, "[t]hat is correct, to 150 percent, yes, sir."

¶18 This evidence clearly opened the door to the admission of the DVD to rebut Defendant's claims that he did not commit the offenses because, among other things, he had no interest in males. *See State v. Hausner*, 230 Ariz. 60, 78, ¶ 71 (2012) (court did not clearly abuse its discretion in admitting evidence of defendant's bisexuality where defendant placed his bisexuality at issue); *see also State v. Leyvas*, 221 Ariz. 181, 189, ¶ 25 (App. 2009) (when party "opens the door" to otherwise objectionable testimony there is no error as long as response is "pertinent" and "responsive to the invitation").

¶19 Furthermore, the prosecutor made no improper use of the evidence. In his closing arguments, the prosecutor argued only that Defendant's claim that he did not commit the offenses because he had no interest in men were belied by the "explicitly pornographic homosexual DVDs" found in his possession. We also disagree with Defendant's contention that the "particular title" of the DVD "was likely extremely offensive" to some jurors such that it would have invited them to speculate that defendant committed the offenses. The prosecutor did nothing to suggest that the mere possession of homosexual pornography made it likely that Defendant had committed these offenses, and Defendant's argument is speculative and unsupported by the record. The trial court did not abuse its discretion in finding the evidence of the DVD admissible. *Rose*, 231 Ariz. at 514, ¶ 63.

*State's Rebuttal Witness*

¶20 In his case-in-chief, Defendant presented three witnesses who testified regarding his character for truthfulness: Lewis M., a business acquaintance turned friend; Albert T., a friend of 25 years and fellow Elk member, who had a business relationship with Defendant off and on, over the years; and Judy L., a former neighbor of Defendant's, who acted as a real estate broker for Defendant and had an intimate relationship with Defendant at one point.

¶21 During his cross-examination of Albert, the prosecutor attempted to question him about whether he was aware that Defendant was

"sleeping" with Judy while representing that he was in a committed relationship with Sharon, another woman. Defense counsel objected to the question as a "mischaracterization of the evidence," because there had been no testimony at trial by either Defendant or Sharon that Defendant was doing "anything dishonest," and because the evidence was irrelevant. The prosecutor avowed to the court that he was prepared to call a rebuttal witness who would testify exactly to this, and stated that he wished to ask the question because "that might affect his opinion about [Defendant's] truthfulness." The court permitted the question, and Albert responded that he had "no knowledge" of Defendant's "cheating."

¶22         When the prosecutor attempted to follow up by asking whether Albert thought "cheating or infidelity sa[id] something about [a] person's character," defense counsel again objected. A bench conference was held at which both counsel and the court attempted to reconstruct prior testimony from memory and notes. The prosecutor stated that he would put Defendant's daughter on in rebuttal, who would testify that Defendant had asked her to "cover up" the relationship. The bench conference ended, and the trial court sustained defense counsel's objection to the follow up question.

¶23         Without objection, defense counsel next asked Albert two question from the jury: (1) "[Can you g]ive an example of honesty shown by [Defendant] that you are able to characterize him as honest?" and (2) "Do you have any knowledge of infidelity?" Albert provided two examples in response to the first question, and replied "I do not" to the second.

¶24         In rebuttal, the prosecutor called Defendant's daughter, who testified that Defendant was seeing two women at the same time and that Defendant had asked her to assist him covering up the relationships. Defendant's daughter also testified that Defendant had taken jewelry and a fur coat from his mother's house after her death. Defense counsel did not object to the testimony on the grounds that it was improper rebuttal testimony.

¶25         On appeal, Defendant argues that calling a rebuttal witness for the sole purpose of offering direct testimony of specific acts of dishonesty was improper and outside the scope of Arizona Rule of Evidence 608. Defendant acknowledges that he failed to raise his objection before the trial court and that we are limited to a fundamental error review. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). The burden of persuasion in fundamental error review is on defendant. *Id*. "To prevail under this

standard of review, a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* at 567, ¶ 20.

¶26        Proof of specific instances of a person's conduct is admissible only when character or a trait of character is an essential element of a charge, claim or defense or pursuant to Rule 404(c).  Ariz. R. Evid. 405(b). Truthfulness or honesty is not an essential element of any of the charges in this case.

¶27        We conclude reversal is not warranted in this case because Defendant has failed to prove that the error was fundamental "in light of the facts and circumstances of his case." *See State v. Dickinson*, 233 Ariz. 527, 530, ¶ 12 (App. 2013) (finding that the error may be fundamental in one case but not in another).  Fundamental error is error that goes "to the foundation of the case, error that takes away from the defendant a right essential to his defense, and error of such magnitude that [he] could not possibly have received a fair trial." *Henderson*, 210 Ariz. at 607, ¶ 19.

¶28        The issue of Defendant's truthfulness was not an essential element of any of the charges or defenses in this case; it was collateral and did not go to the foundation of his case or deprive Defendant of a right essential to his defense or of a fair trial. *Id.*  Furthermore, Defendant fails to prove prejudice.  A defendant must "affirmatively 'prove prejudice' and may not rely upon speculation to carry his burden" under a fundamental error standard. *Dickinson*, 233 Ariz. at 531, ¶ 13.  To do so, the defendant must show that a reasonable jury could have reached a different verdict if the evidence had not been admitted. *Id.*  The evidence presented by Defendant's daughter here was brief and collateral to the charges and counter-balanced by Defendant's witnesses' testimony of their perceptions and dealings with Defendant.   The testimony was never mentioned in closing arguments by either the prosecutor or defense counsel.  Defendant's claims that the evidence was so "inflammatory" and "damning" that it deprived him of a fair trial amounts to speculation, particularly in light of all of the other evidence at trial. *Id.*

*Witness Vouching*

¶29        Defendant argues also for the first time on appeal that two defense witnesses, Defendant's grandson Levi and Defendant's girlfriend Sharon, improperly vouched for A.G. and N.M.'s credibility.  We review this claim for fundamental error as well. *Henderson*, 210 Ariz. at 567, ¶ 19.

¶30        During her questioning of Levi, defense counsel elicited testimony that Defendant had never done anything sexually inappropriate

with him and also that A.G. had never told him anything about what happened with Defendant. On cross-examination, the prosecutor referred Levi to an interview Levi had with a detective in which Levi had indicated that some of the things that A.G. had said "kind of made sense" from things that Defendant had said to Levi. Levi testified that he believed the reason A.G. did not tell him what was happening with Defendant at the time was because Defendant told A.G. that he was also "doing the same things" with Levi, leading A.G. to believe the conduct was "okay."

¶31         During her questioning of Sharon, defense counsel elicited testimony that she never noticed any inappropriate behavior between N.M. and Defendant. Sharon also testified that, although she learned in 2006 that N.M. had accused Defendant of molesting him, she continued to live with Defendant "a couple more years" and was still seeing Defendant at the time he was arrested for the present offenses. During cross-examination of Sharon, the prosecutor asked Sharon to clarify if the reason she continued to stay with Defendant after N.M.'s allegations was based on a conclusion that Defendant did not commit the acts, or because Defendant no longer had contact with N.M. after the accusations. Sharon testified that she tended to believe N.M., but continued to see Defendant because, after the accusations, Defendant no longer had contact with her grandson.

> [Prosecutor]: So if somebody were trying to imply by all of this that you don't believe your grandson, is that inaccurate?
>
> [Sharon]: That is very inaccurate.

¶32         Contrary to Defendant's contentions, the challenged testimony was not improper vouching for the victims' credibility. *See State v. Doerr*, 193 Ariz. 56, 63, ¶ 26 (1998) ("One witness may not . . . state an opinion as to the credibility of another.") Neither witness expressed his or her opinion that the victims were telling the truth. Their testimony was the State's attempt to respond to defense counsel's implication that A.G. was not to be trusted because he did not confide in his brother and that N.M.'s accusations were questionable because his own grandmother continued to live with Defendant despite his allegations. Levi's testimony explained why A.G. might not have immediately confided in him, and Sharon's explained why she could nonetheless continue to live with Defendant. Under these circumstances, the State was entitled to address the impression left by defense counsel's questions. *See id.* at 63, ¶ 27 (where defendant opens door to comments or testimony that require some response he cannot complain about result he caused).

*Detective's Reference to Uncharged Acts*

**¶33**        Flagstaff Police Detective Jared Wotasik interviewed A.G. in June 2013, approximately a year prior to trial.  Defendant called Wotasik as a witness in his case-in-chief.  On direct, defense counsel asked Wotasik questions suggesting that during the interview A.G. was "demonstrating some reluctance or hesitation" and being "ambiguous and having trouble providing details about the events."  Defense counsel then asked questions suggesting that Wotasik ended the interview and continued it to July because he was not getting the information he wanted.  In response, Wotasik testified that the interview was ended because A.G. had not realized "how much [the interview] would bring out in him" and was "emotionally overwhelmed," and not because of any "reluctance" by A.G. to provide information about the incidents.

**¶34**        During cross-examination, the prosecutor asked Wotasik to give "a sense" of what it was like during the June interview when A.G. tried to tell Wotasik about "what his grandpa did to him."  Wotasik responded that "it was extremely difficult," that A.G. was "very emotional from the beginning," "cry[ing] several times and breaking down," and that "[t]here was no way [A.G.] could emotionally continue."  The prosecutor also asked Wotasik directly, "[d]id [A.G.] state, in your presence, at least once, that there were things that his grandpa had done to him that he would never tell us about because he was too embarrassed?"  Wotasik replied, "[y]es."

**¶35**        On appeal, Defendant argues that the testimony about other, uncharged acts is improper hearsay that also violated Rule 404 and that the testimony deprived him of a fair trial by causing the jury to speculate about other "uncharged depraved acts" he committed.  The State responds that the statement was not improper hearsay, or improper Rule 404 evidence, because it was not offered to prove that the other acts actually existed but simply to explain why the interview was ended.

**¶36**        Defendant concedes he failed to object to this testimony, and as a result this issue is subject to fundamental error review.  *Henderson*, 210 Ariz. at 567, ¶ 19.

**¶37**        We find no error.  It is not clear from the record whether the subject testimony referred to uncharged acts.  A.G. testified, without objection, that there were "so many instances" of abuse that had occurred with Defendant that were "scattered" over time and that he was testifying only about certain incidents for which he remembered specific details.  Defendant has also failed to prove actual prejudice.  *See id.*, (defendant must

prove error was "of such magnitude that [he] could not possibly have received a fair trial"); *Dickinson*, 233 Ariz. at 531, ¶ 13 (to prove actual prejudice defendant must show that reasonable jury would have reached different result). The reference was made in a brief statement that occurred in the course of lengthy testimony during a six-day trial and was not alluded to in closing argument. In addition, the jurors were already aware prior to Wotasik's testimony that uncharged incidents existed. Based on the record, Defendant has not shown that the jury would have reached a different verdict without this challenged testimony.

*Improper Jury Instruction*

**¶38**        Defendant requested that the trial court instruct the jury that the State was required to prove that he was motivated by a sexual interest. The State objected, arguing that the lack of sexual interest or motivation was an affirmative defense and not an element of any of the charged offenses. The trial court agreed and denied Defendant's requested instruction but instructed the jury as follows:

> The defendant has raised the affirmative defense of lack of sexual interest with respect to the charged offenses of molestation of a child and sexual abuse. The burden of proving each element of the offense beyond a reasonable doubt always remains on the state. However the burden of proving the affirmative defense of lack of sexual interest is on the defendant. The defendant must prove the affirmative defense of lack of sexual interest by a preponderance of the evidence. If you find that the defendant has proven the affirmative defense of lack of sexual interest by a preponderance of the evidence as to any or all of the counts, you must find the defendant not guilty of any such count or counts.

On appeal, Defendant claims that the trial court's failure to instruct the jury that the State had the burden of proving that he was motivated by sexual interest when he committed the offenses is reversible error.

**¶39**        We review a trial court's refusal to give a jury instruction for an abuse of discretion. *State v. Anderson* (*Anderson II*), 210 Ariz. 327, 343, ¶ 60 (2005). We review de novo whether the jury instructions given correctly stated the law. *State v. Orendain*, 188 Ariz. 54, 56 (1997).

**¶40**        Defendant's argument is focused on the charge of sexual molestation of a child. A.R.S. § 13-1407(E). As Defendant correctly notes,

this court has previously found that "sexual interest" is not an element of the charged offense but instead an affirmative defense regarding motive. *State v. Simpson*, 217 Ariz. 326, 329, ¶ 19 (App. 2007). Defendant invites us to revisit our decision; this we decline to do.

**¶41** The trial court properly instructed the jury on the elements of child molestation, sexual conduct with a minor, and continuous sexual abuse of a child. None of the offenses includes "sexual interest" as an element of the offense. The trial court also properly instructed the jury on the affirmative defense of lack of sexual interest. Furthermore, Defendant did not argue that he engaged in any of the acts for which he was ultimately convicted for a "non-sexual purpose" or by mistake or inadvertence; he maintained that the incidents did not occur, that the victims were lying, and that the charges were motivated by family members' financial interest. The trial court did not abuse its discretion in denying Defendant's requested instruction.

## CONCLUSION

**¶42** For the foregoing reasons, we affirm Defendant's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : jt